IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL GARNER, | ) | |
|     Petitioner, | ) | Civil Case No. 7:18cv00560 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, | ) | By: Michael F. Urbanski |
|     Respondent. | ) | Chief United States District Judge |

Michael Garner, a Virginia inmate proceeding <u>pro se</u>, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging due process violations related to a disciplinary conviction. This matter is before the court on respondent's motion for summary judgment.[1] After reviewing the record, the court concludes that respondent's motion must be granted.

I.

Garner is in the custody of the Virginia Department of Corrections ("VDOC"), serving sentences totaling twenty-four years of incarceration on multiple 2010 convictions and a probation revocation. Upon his entry into the VDOC on March 24, 2010, Garner was assigned to the Earned Sentence Credit ("ESC") good time earning system because his offenses were committed after 1995. Under the ESC system, an inmate may earn between zero and four and half days of sentence credits for every thirty days he has served, based upon the Class Level to which he is assigned.[2] By statute, the Virginia Board of Corrections establishes "the criteria upon which a person shall be deemed to have earned sentence credits." Va. Code § 53.1-202.4.

---

[1] Respondent titled his motion as a motion to dismiss and attached exhibits, including an affidavit, upon which the court relies. Accordingly, the court converts respondent's motion to a motion for summary judgment and has give Garner appropriate notice. <u>See</u> Fed. R. Civ. P. 12(d); <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975); ECF No. 13.

[2] Pursuant to the ESC system, while in the VDOC, an inmate is eligible to earn good time credit at the following rates:
    Class Level 1: 4.5 days for every 30 days served
    Class Level 2: 3 days for every 30 days served
    Class Level 3: 1.5 days for every 30 days served
    Class Level 4: 0 days for every 30 days served.

When he began serving his sentence, Garner was initially assigned to Class Level 1, which resulted in a projected good time release date of March 19, 2029. Projected release dates are based on the assumption that the inmate will continue to earn good time at the present earning level and will not have earned good time taken from him as a result of misbehavior. Loss of earned good time, a change in good time earning Class Level, or any other event that impacts the service of the total sentence may cause the projected release date to change. An inmate's good time earning Class Level may change as a result of disciplinary offense charges, a change in classification assessment, or some other event that would impact an inmate's sentence.

On April 3, 2017, while Garner was housed at Dillwyn Correctional Center, a disciplinary hearing officer found Garner guilty of an institutional charge of threatening to commit/inciting a riot, and imposed a penalty of twenty days in disciplinary segregation. On April 10, 2017, Garner's good time earning Class Level was changed to Class Level 4, which meant that, going forward, he would earn no good time credit for as long as he remained at that Class Level. Consequently, his projected good time release date was recalculated to November 4, 2031. On July 5, 2018, Garner's good time earning Class Level was changed again to Class Level 1, and his projected good time release date was recalculated to May 9, 2029, approximately fifty-one days later than his projected good time release date had been when he began serving his sentence.

Garner filed the instant § 2254 petition, claiming that he was denied due process during the disciplinary hearing and appeals process related to the 2017 disciplinary conviction, because he was denied witnesses and documentary evidence. He also complains about his recalculated projected good time release date, arguing that he "lost" good time credit. Respondent has moved for summary judgment and the court will grant respondent's motion.

## II.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Fourteenth Amendment prohibits a state from depriving an individual of liberty without due process of law. U.S. Const. amend. XIV. A constitutionally protected liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or it may arise from an expectation or interest created by state laws or policies."[3] Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

To determine whether an inmate retains a certain liberty interest, the court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972). The Supreme Court held in Sandin v. Conner, 515 U.S. 472 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause, or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id. at 484. Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

Temporary confinement in segregation is clearly contemplated by an inmate's original sentence and Garner has alleged no facts to suggest that his temporary confinement in segregation was an atypical and significant hardship in relation to the ordinary incidents of prison life. See id. at 484, 486 (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest); Gaston v.

---

[3] The court has omitted internal quotation marks, alterations, and citations here and throughout this memorandum opinion, unless otherwise noted.

Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir. 1997) (rejecting a due process claim by inmates held in administrative segregation for six months after disciplinary charges were resolved). Accordingly, the court concludes that Garner has not demonstrated that his placement in segregation violated the Due Process Clause.

### III.

As relief to his habeas petition, Garner requests restoration of his "lost" good time credit.[4] First, the court notes that there is no evidence to suggest that Garner lost any good time credit that he had already earned. Rather, the only evidence is that the rate at which he prospectively earned good time credit was reduced for a period of time following his disciplinary conviction. Second, Garner does not allege that was denied any procedural protections at any hearing related to his Class Level being reduced. However, even if his petition could be construed as alleging such, inmates have no liberty interest derived from the Constitution itself in earning good time credit or in a particular good time credit earning level. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Thus, for Garner to succeed in a claim, he must show that Virginia laws or policies create a protected liberty interest for him in retaining his Class Level. Wilkinson, 545 U.S. at 221. Garner cannot make this showing. On the contrary, "[i]t is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn either Earned Sentence Credits or Good Conduct Allowances." Dennis v. Clarke, No.

---

[4] The court notes that Garner has not established a direct connection between his disciplinary conviction and his reduced good time earning Class Level. However, inasmuch as his good time earning Class Level was reduced seven days after his disciplinary conviction, it appears the reduction was based, at least in part, on the disciplinary conviction.

3:15CV603, 2016 U.S. Dist. LEXIS 110036, at *18, 2016 WL 4424956, at *6 (E.D. Va. Aug. 17, 2016) (citing many cases); Mills v. Holmes, 95 F. Supp. 3d 924, 931-34 (E.D. Va. 2015).

State laws and policies create a liberty interest entitled to federal constitutional due process protections when they involve a status change that "inevitably affect[s] the duration of" the inmate's confinement. Sandin, 515 U.S. at 484. "[N]o constitutionally protected liberty interest is . . . created under the [statutory] regime [if] either the primary decisionmaker or any reviewing authority is authorized to override, as a matter of discretion, any classification suggested by application of the prescribed substantive criteria." Mills, 95 F. Supp. 3d at 933. Because Virginia's good conduct time programs endow officials with such discretion, whatever change a Class Level adjustment may render in an inmate's projected release date does not "inevitably affect" the actual length of time he will serve, so as to create a protected liberty interest under Sandin. Baker v. Clarice, No. 7:18cv00620, 2019 U.S. Dist. LEXIS 103763, at *9, 2019 WL 2552227, at *4 (W.D. Va. Jun. 20, 2019).

VDOC Operating Procedures ("OPs") 830.1 and 830.3 provide detailed procedures that prison officials must follow when modifying an inmate's Class Level.[5] An inmate's Class Level may be modified during his annual review of his classification or outside of his annual review through a Formal Due Process Hearing, as defined in the VDOC OP. Whether at a Formal Due Process Hearing or an annual review, an inmate's Class Level may only be reduced on the recommendation of the Institutional Classification Authority ("ICA") and the approval of the Facility Unit Head. VDOC procedures state that a Class Level reduction should be based on a "significant decline in any area of performance and responsibility to the extent that the offender clearly has failed to maintain behaviors that led to advancement to the present class." To determine an inmate's Class Level, the ICA evaluates him based on a point system. Inmates may

---

[5] The court takes judicial notice of these publicly available VDOC OPs. See Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015) (explaining that court can take judicial notice of public record).

earn up to 100 points in three categories: "Infractions"; "Reentry Plan, Annual Goals"; and "Work." This point score and attendant Class Level can be rejected by the classifying authority by applying one of seven "approved overrides" that "must be justified with override numbers and supporting comments" from the ICA. An inmate's Class Level is only changed when the Facility Unit Head approves the ICA's recommendation. A review of VDOC procedures makes clear that an inmate's Class Level does not affect his privileges, degree of physical restraint, or other aspects of the inmate's experience of his confinement; rather, Class Level affects only the rate at which good time credit can be accrued and, thereby, the projected amount of time the inmate will remain confined. Thus, any claimed interest in an inmate's Class Level is one which affects the duration of his sentence and is, thus, in the nature of a liberty interest. See Wilson v. Jones, 430 F.3d 1113, 1117 (10th Cir. 2005); McGuinness v. Dubois, 75 F.3d 794, 798 n.3 (1st Cir. 1996); Orellana v. Kyle, 65 F.3d 29, 32-33 (5th Cir. 1995); Puranda v. Johnson, No. 3:08cv687, 2009 U.S. Dist. LEXIS 93226, at *12, 2009 WL 3175629, at *3 (E.D. Va. Sept. 30, 2009).

Although VDOC regulations provide "substantive predicates" for awarding inmates a certain Class Level, the regulations do not *require* particular "substantive results" once those predicates have been established. This is so because the ICA may reject an inmate's point score and resulting Class Level assignment on the basis of one of seven overrides, which include a discretionary assessment that a point score in one area of evaluation is inordinately high or low or that a "significant recent decrease in an areas of evaluation warrants a lower Class Level." The authorization of these subjective assessments to override an inmate's point score effectively "grant[s] absolute discretion to override [Class Level] determinations based on total point scores," permitting the ICA or the warden "to decide the [Class Level] to which an individual inmate may be assigned," regardless of his point score. James v. Robinson, 863 F. Supp. 275,

278 (E.D. Va. 1994). Furthermore, the Facility Unit Head must approve the ICA action—that is, the eventual recommendation taking into account the point score and any overrides—before a change in Class Level takes effect. In sum, the VDOC regulations fail to place substantive limitations on official discretion that would give rise to a legitimate claim of entitlement in retaining one's Class Level. See Mills, 95 F.Supp.3d at 934. Thus, the court concludes that Garner did not have a constitutionally protected liberty interest in retaining his Class Level and, thus, he had no federal constitutional right to particular procedural protections during proceedings when officials modified his Class Level.

Garner also cannot demonstrate any constitutional deprivations arising from officials' alleged violations of state law or VDOC regulations related to his Class Level. While state regulations may provide for more stringent procedural protections than the Due Process Clause requires, "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).

## IV.

Based on the foregoing, the court concludes that Garner has not shown that he is in custody in violation of the Constitution or laws or treaties of the United States, see § 2254(a), and, therefore, the court will grant respondent's motion for summary judgment.

**ENTER**: This 17th day of September, 2019.

/s/ Michael F. Urbanski
Chief United States District Judge